UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DENNIS BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:11-cv-00179-JAW |
| | ) |
| STATE OF MAINE COMMISSION ON | ) |
| GOVERNMENTAL ETHICS AND | ) |
| ELECTION PRACTICES, | ) |
| | ) |
| Defendant | ) |

**ORDER ON MOTION TO COMPEL**
(D<small>OC</small>. N<small>O</small>. 14)

Intervenor-Defendant Eliot R. Cutler has filed a Motion to Compel seeking third-party witness compliance with a subpoena duces tecum issued to two witnesses in advance of their depositions. The witnesses are Thomas Rhoads and Rosa Scarcelli. Dennis Bailey, the plaintiff in this action, was a paid public relations consultant for the gubernatorial primary campaign of Rosa Scarcelli. Thomas Rhoads is Scarcelli's husband and was a member of her political campaign. Bailey was fined by the State of Maine Commission of Governmental Ethics and Election Practices for his role in the production and publication of the website known as the "Cutler Files" during the last gubernatorial election in Maine. Bailey has now brought this lawsuit seeking to vindicate his actions in connection with the website. Bailey and Rhoads take the position that the website was an act of citizen-journalism that they independently pursued and that they are entitled to First Amendment protections. Scarcelli claims the website was not part of her political campaign strategy and that she had no knowledge of the website prior to its publication. Presumably Cutler and the State of Maine want to probe these positions during the third party witness depositions of Rhoads and Scarcelli. Scarcelli and Rhoads are asserting First

Amendment rights and the marital privilege in resisting the document production that accompanies the subpoena.

I held a conference with counsel for all parties on October 11, 2011.  As a result of that conference, Cutler was given leave to file this motion to compel, the depositions were rescheduled to October 24, 2011, and an abbreviated briefing schedule was adopted in order for this court to properly rule on the issues of privilege being asserted by Scarcelli and Rhoads.  In the interim, third party Scarcelli and movant's counsel have reached an accommodation and she has produced the documents necessary to allow her deposition to go forward.

Rhoads presents a different picture.  He continues to assert that a First Amendment privilege shields many documents in his possession from disclosure.  He does not directly assert a marital privilege in his memorandum, claiming, inexplicably, that it is irrelevant although not waived.  The problem with Rhoads's approach is that he has produced a useless privilege log (Doc. No. 19-1) that does not assist in any way to move this matter forward.  None of the documents that he claims to have withheld are listed as within a First Amendment privilege; he claims merely that they are not discoverable because they are not reasonably calculated to lead to the discovery of admissible evidence or because they are subject to attorney/client privilege.

Of course, Rhoads will probably blame me for the inadequacies of his privilege log because during the telephone conference I was solicitous of his claim that preparation of a detailed privilege log would be expensive and burdensome for him.  I told him it was permissible to group similar e-mails or other correspondence.  I did not think I gave him leave to fail to file anything that had any value in terms of understanding what he has withheld.  Rhoads has produced a useless privilege log that only specifically identifies four documents.  Nevertheless, I will attempt to address the issues that Rhoads has specifically raised in opposition to the motion

to compel: (1) whether the four documents appear reasonably calculated to lead to admissible evidence[1]; (2) what the extent of the attorney/client privilege is in this case; (3) whether the subpoena duces tecum contemplates marital documents; and (4) whether Perry v. Schwarzenegger, 591 F.3d 1126 (9th Cir. 2009), has any applicability to the facts of this motion as it has been explained to me thus far.

**1.     The Rhoads/Bailey correspondence**

The four identified documents appear to be a chain of correspondence between Rhoads and Dennis Bailey on June 24, 2011, and the documents have to do with the "Cutler intervention" or the "Cutler muzzle award." Cutler moved to intervene in this lawsuit in March 2011, and was granted leave to do so on April 13, 2011. Thus, these documents were generated during the pendency of litigation, not at the time of creation of the website. However, Rhoads does not claim that the documents are work product unique to the pending litigation. Without more, he simply announces by way of ipse dixit that the four documents are not reasonably calculated to lead to admissible evidence. The documents appear to be about Eliot Cutler and the subject matter suggests they are about intervening and/or muzzling him. The subject matter of this lawsuit is whether Bailey and Rhoads undertook to muzzle Cutler or intervene in his campaign as passionate and disinterested journalists or as campaign operatives for Rosa Scarcelli. Of course, the documents might be about Cutler's intervention in this lawsuit and the need to muzzle his legal assault and then they would probably be about litigation strategy, as opposed to the Cutler website, in which case they would be unlikely to lead to admissible evidence. But Rhoads has not made that argument and he has made no showing that these

---

[1]     Rhoads also has an entry in his privilege log which reads "## news[author] T.Rhoads [recipient] various [dates] post October 2010 Cutler news [subject]." I, quite frankly, have no idea what this means. It appears to represent a number of documents produced "by the news" and sent to Rhoads. If the documents are responsive to the subpoena, I can think of no reason why they should not be produced.

documents are privileged or otherwise not related to the subject matter of this lawsuit. The four documents are ordered to be produced prior to Rhoads's deposition. Production will be subject to the confidentiality order if, indeed, Rhoads maintains that the documents are somehow personal documents that should be treated as sealed documents.

**2.      Attorney/Client Privilege**

Rhoads's privilege log simply describes many e-mails between himself and D. Billings. Rhoads apparently has a legitimate claim of privilege regarding his communications with Billings that pertain to legal advice about any matter, including the hearing before the Commission. If Rhoads's privilege log indicated that all of the withheld e-mails pertained to that subject, and were not previously disseminated to any third parties, it would be a clear case of attorney/client privilege. However, the privilege log, as currently constructed, does not indicate the origination date or subject matter of the "many e-mails." If there are e-mails between Rhoads and Billings that predate the Commission's investigation or do not relate to other representation by Billings, then they may not be privileged. Likewise, if e-mails were shared with third parties a different analysis would apply.

Furthermore, one of Billings's associates, Erin Lehane, was involved with Rhoads and Bailey in the formulation of the website. If she e-mailed Rhoads regarding the content of the website or the subject matter of the website and shared that information with Bailey as well, it does not appear that those e-mails would be subject to an attorney/client privilege. At a minimum, Rhoads must provide a privilege log that includes any e-mails with Lehane that pertain to the website. If Lehane was not representing Rhoads in connection with any matter at the time the e-mails were generated and they related solely to content of the website, as Bailey suggested in his deposition testimony, then Rhoads is ordered to disclose those e-mails.

### 3. The marital privilege

I do not understand Rhoads's argument that the motion to compel does not extend to any documents subject to the marital privilege. If Rhoads created or received documents from Scarcelli that are in any way responsive to the subpoena duces tecum they should be produced or made subject to the privilege log. Obviously, documents between Scarcelli and Rhoads that have already been shared with third parties, *i.e.*, Bailey, would not at first blush appear to be candidates for this privilege. If Rhoads wishes to withhold specific documents between himself and Scarcelli that are responsive to the subpoena duces tecum, he should properly identify them in a proper privilege log and I could make a reasoned determination whether they were subject to the privilege or not. The showing made by Rhoads in his privilege log and responsive memorandum is totally unsatisfactory.

### 4. The <u>Perry v. Schwarzenegger</u> privilege

Rhoads has consistently cited this Ninth Circuit case about freedom of association rights under the First Amendment. I cannot understand from his memorandum in opposition to the motion to compel (Doc. No. 18) how that case has anything to do with the facts of this case. Nor has he asserted that particular privilege regarding the documents he has withheld from production. Bailey, the plaintiff in this action, is claiming a First Amendment free speech right in connection with his underlying complaint and presumably Rhoads, as a co-author of the website, would claim the same First Amendment free speech right to engage in journalism without state interference. It is not immediately apparent to me how that First Amendment claim about materials that Rhoads and Bailey say were *not* prepared in furtherance of a campaign strategy of any candidate or political group relates to the sort of discovery sought in the Ninth Circuit case. That case involved discovery requests directed at the proponents or supporters of a

political campaign and seeking communications related to their campaign strategy. It is beyond my immediate grasp and has not been explained to me in any briefing to date how that issue relates to obtaining discovery from Bailey and Rhoads and their First Amendment right as independent journalists to publish a blog that is allegedly not directly or indirectly affiliated with any political campaign.

The issue I have reserved ruling on is whether any of the materials previously produced during discovery should be "pulled back" as Rhoads claims. If there were some First Amendment mischief in their production (an idea that has not been not developed to date), the harm, whatever it is, has already occurred. In my view, the more important issue regarding the materials produced during discovery is whether the public has a First Amendment right to view all materials upon which the court will be asked to rely when it eventually rules on dispositive motions filed by the parties. Thus, the "sealing" issue relates to whether or not any materials actually filed with the court are entitled to the confidential status they currently have under the confidentiality order, if either party intends to actually file discovered materials with the court. If Rhoads has some other claim of privilege, he has not articulated it in either his privilege log or the memorandum in opposition to the motion to compel.

## Conclusion

Based upon the foregoing, I now GRANT the Motion to Compel as to the four documents enumerated in the privilege log and as to the "## news" articles that are unexplained. I further GRANT the Motion to Compel as to any correspondence from D. Billings that was shared with third parties or which did not arise because of D. Billings's representation of Rhoads. As to correspondence between Rhoads and Erin Lehane, Rhoads shall provide a DETAILED privilege log enumerating the withheld correspondence or else produce these documents. As to responsive

documents that fall within what he claims to be a marital privilege, Rhoads shall likewise provide a DETAILED privilege log or else produce the documents.

CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

October 19, 2011                       /s/ Margaret J. Kravchuk
                                       U.S. Magistrate Judge