UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DENNIS BAILEY, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>STATE OF MAINE COMMISSION ON )<br>GOVERNMENTAL ETHICS AND )<br>ELECTION PRACTICES, et als. )<br>)<br>Defendants )<br>)<br>and )<br>)<br>ELIOT CUTLER, )<br>)<br>Intervenor-Defendant ) | 1:11-cv-00179-JAW |

**ORDER ON MOTION TO COMPEL**
**(Doc. No. 25)**

In this civil action, Plaintiff Dennis Bailey maintains that the Maine Campaign Reporting Act is unconstitutional and that the decision of the Maine Commission on Governmental Ethics and Election Practices to impose a fine on him for engaging in anonymous "citizen journalism" violated his constitutional rights to free speech and equal protection. In the course of pretrial discovery, Third-Party Thomas Rhoads was served with a deposition subpoena requesting production of certain documents. Rhoads produced several documents subject to a Consent Confidentiality Order, but withheld one document in his possession that was prepared for his wife's campaign to win the democratic primary election associated with Maine's 2010 gubernatorial race. Now pending before the Court is Intervenor Eliot Cutler's motion to compel production of this document.[1] Rhoads has submitted a paper copy of the document for in camera

---

[1] Bailey commenced this action in the Maine Superior Court. The Superior Court granted Eliot Cutler intervenor status in the action and it was Cutler who petitioned for removal of the action to federal court, based on

1

inspection. I now GRANT the motion.

## BACKGROUND

The exhibit in question is a three-page document dated November 30, 2009, related to Rosa Scarcelli's anticipated visit in Washington, D.C. with the Democratic Governors Association.[2] The document consists of a two-page memorandum and an Appendix A—a quarter-page list of websites—which together amount to an internal briefing document from the "Rosa For Maine" campaign, apparently intended for the candidate's eyes only. It has been characterized by Intervenor Cutler as the DGA memo, suggesting that it was furnished to that organization, but it is apparent to me that the memo itself was not intended to be furnished to the DGA. The memo was only furnished to me for the purpose of my in camera review. I am satisfied that the memo is nothing more than what it is captioned, an "Internal Briefing Memo." Some of the information in the memo may have been shared with certain operatives at the DGA, but the parties are well aware of that information because it has already been produced during discovery in the form of an email chain that is identified as DB 953-954, 961 or has otherwise been revealed through discovery.

## DISCUSSION

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery is limited to any nonprivileged matter that is relevant to any party's claim or defense. The parties had the opportunity to depose nonparty Scarcelli herself and discuss her contact with the DGA and Bailey's role in developing her position within the Democratic Party. (Scarcelli Dep. at 55.)

---

the existence of federal question jurisdiction. (See Doc. Nos. 1, 3.)

[2] In his reply memorandum Cutler also requests that this Court order Rhoads to produce a "version" of the Rhoads "Top Ten List." This "version" is mentioned in the Rhoads Declaration at paragraph 4 (Doc. No. 53-1) as a version of information already provided to Cutler at DB403-DB411. I, quite frankly, have no idea what this dispute is about; it sounds like much ado about nothing. I am assuming the parties will resolve whatever discrepancy is involved here because it does not appear that Rhoads is claiming any first amendment association rights privilege in connection with this document.

However, in terms of the claims and defenses in this lawsuit, the issue is not whether Scarcelli actually shared this information with the DGA.  To the best of my knowledge, based upon my cursory examination of the record evidence, Scarcelli herself was never even asked whether she actually shared the information in the Bates stamped emails with any one at the DGA during her trip to Washington, D.C. in late 2009, nor is it relevant to the issues in this case whether she did so.  Having reviewed the "Internal Briefing Memo," it is clear to me that this document is not in a format that would suggest the memo itself be shared with the DGA.

The internal briefing memo itself has relevance to the issues and claims in this lawsuit because it arguably establishes that the candidate's campaign was given the benefit of research that later found its way into the Cutler Files and that her campaign advisors instructed her regarding how she should use this information when meeting with the DGA.  According to Intervenor Cutler, this fact is potentially probative of whether or not the Cutler Files research, or a portion of it, was, in fact, produced and used in furtherance of a strategy of the "Rosa For Maine" campaign for governor.  (Mot. to Compel at 2, Doc. No. 25.)  At this discovery phase I am certainly not ruling on the ultimate admissibility of this evidence or on whether drawing the inference suggested by Cutler about this earlier use of the research is the "smoking gun" that negates Bailey's contention that his research and writing on the Cutler Files occurred outside of the campaign arena.  However, the internal briefing memo is clearly relevant and discoverable as relating to the issues of this case within the meaning of Rule 26.

The issue then becomes whether the internal briefing memo is a privileged document under the First Amendment as articulated by the Ninth Circuit in the case of Perry v. Schwarzenegger, 591 F.3d 1126 (9th Cir. 2009).[3]  The Perry opinion articulated a two-part framework for analysis of first amendment privilege claims in this context:

> The party asserting the privilege must demonstrate a prima facie showing of arguable first amendment infringement. This prima facie showing requires [that party] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights. If [that party] can make the necessary prima facie showing the evidentiary burden will then shirt to the government to demonstrate that the information sought through the discovery is rationally related to a compelling governmental interest and the least restrictive means of obtaining the desired information.

Id. at 1140 (citations, internal punctuation, and footnote omitted); See also United States v. Comley, 890 F.2d 539, 544 (1st Cir. 1989) (discussing first amendment association rights in the context of administrative subpoena). Rhoads has not shown that the narrow discovery request targeting this one document meets even the prima facie showing, assuming that the First Circuit would treat the production of internal campaign documents such as this one with the same level of scrutiny as compelling a private organization to reveal the identities of its members, the apparent genesis of this first amendment associational right. NAACP v. Alabama, 357 U.S. 449 (1958).

Supporters of the "Rose For Maine" campaign have not been broadly targeted by this discovery and there is no harassment of any party. Nor does the production of this internal briefing memo suggest that the candidate herself did anything improper or unlawful, so as to discourage new support or withdrawal of support for her. The prior candidate is not currently involved in any political campaign and there is nothing in this briefing memo that would objectively suggest a negative impact on her. If the subject of the political campaign and her supporters in general are not negatively impacted by this discovery production, the issue comes down to whether or not Rhoads himself is harassed or whether his associational rights are chilled by discovery targeted at what was intended as an internal campaign document. The production

---

3   This is the only privilege asserted by Rhoads at this juncture.

4

of this internal memo, admittedly authored by Rhoads for the benefit of his wife's political campaign, might be potentially impeaching evidence against Rhoads or Bailey should either ever testify at trial that the Cutler Files research never had any political purpose associated with Rhoads's wife's campaign. However, that sort of personal embarrassment would arise from their past statements about the campaign's lack of involvement in the Cutler Files, not simply from association with the "Rose For Maine" campaign. There is no reason to believe that their associational rights will be chilled in any way by the suggestion that Rhoads prepared research and furnished it to his wife to assist her when she made a presentation to the Democratic Governors Association. At the time he prepared the memo there was apparently absolutely nothing improper about its use for the purpose of furthering the agenda of the "Rosa For Maine" campaign. There is nothing in the memo that tends to embarrass or ridicule or harass anyone for associating themselves with the "Rosa For Maine" campaign.

The focus of the pending litigation is whether or not the State improperly fined Bailey as a "citizen journalist." The document is relevant to the extent it impeaches Bailey's and Rhoads's contention that the Cutler Files research and writing was not undertaken for any campaign purpose associated with "Rosa For Maine." Whether this earlier use of the research has any direct bearing upon the later, anonymous publication of the Cutler Files website is a legal issue that will be considered in the content of the merits determination. The memo is discoverable under Rule 26 and it is not privileged under the Perry rationale.

## CONCLUSION

For the reasons set forth above, Intervenor Cutler's Motion to Compel Production (Doc. No. 25) is GRANTED. Fourteen days following the entry of this Order, absent further order of this Court, Rhoads shall produce the document in question. It will not be treated as confidential

for purposes of the Consent Confidentiality Order, as it is not produced pursuant to that Order.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Rule 72 of the Federal Rules of Civil Procedure.

*So Ordered.*

December 19, 2011                    /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge