UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DENNIS BAILEY, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>STATE OF MAINE COMMISSION ON )<br>GOVERNMENTAL ETHICS AND )<br>ELECTION PRACTICES, et als. )<br>)<br>Defendants )<br>)<br>and )<br>)<br>ELIOT CUTLER, )<br>)<br>Intervenor-Defendant ) | 1:11-cv-00179-JAW |

**ORDER ON MOTIONS TO MAINTAIN CONFIDENTIAL STATUS**
**(Doc. Nos. 27 & 35)**

In the course of discovery, Plaintiff Dennis Bailey and Third-Party Deponent Thomas

Rhoads produced documentary evidence of email correspondence they engaged in during

Maine's 2010 gubernatorial campaign.  Plaintiff Bailey created a website during that campaign

known as "the Cutler Files," the primary objective of which was to undermine Eliot Cutler's

independent bid for the Blaine House.  Third-Party Rhoads, the husband of democratic primary

candidate Rosa Scarcelli, supplied Bailey with some of the content for the website and actively

encouraged its creation, though the website was not established until after Scarcelli was out of

the race.  The Maine Commission on Governmental Ethics and Election Practices charged Bailey

with a violation of the Maine Campaign Reporting Act and ultimately fined him $200 for failing

to disclose his authorship of the website content.  In this civil action, Bailey maintains that the

Maine Campaign Reporting Act is unconstitutional and that the Commission's enforcement of the act in his case violated his constitutional rights to free speech and equal protection.  Among other contentions, Bailey asserts that his authorship of the Cutler Files was in the capacity of a "citizen journalist" and that he had a constitutional right to engage in such speech anonymously.

The parties to this litigation, including Intervenor Eliot Cutler[1] and the Third Party Deponents, agreed that discovery in this action would be subject to a consent confidentiality order and when Bailey and Rhoads disclosed their private email correspondence they designated it as confidential under the terms of that order.  The State and Cutler have objected that the correspondence is not properly designated as confidential.  Now pending before the Court are motions by Bailey and Rhoads to maintain confidential status for certain of their correspondence.[2]  (Rhoads Mot. to Retain Confidentiality of Docs., Doc. No. 35;  Bailey Mot. to Retain Discovery Docs. as Confidential, Doc. No. 27.)  The motions are granted, in part.

### THE CONSENT CONFIDENTIALITY ORDER

The parties' confidentiality agreement is found in this Court's Consent Confidentiality Order (CCO).  (Doc. No. 11.)  The CCO provides that "all documents produced in the course of discovery" are subject to its terms "concerning confidential information."  (Id. ¶ 1.)  The CCO permits a party to produce documents with a designation that the documents are "confidential" and "subject to protective order," and to make a similar designation respecting portions of deposition testimony.  However, the designation in itself does not confer protection except to the extent provided for in the CCO.  (Id. ¶¶ 2, 4.)  The designation is appropriate only if the party

---

[1]      Bailey commenced this action in the Maine Superior Court.  The Superior Court granted Eliot Cutler intervenor status in the action and it was Cutler who petitioned for removal of the action to federal court, based on the existence of federal question jurisdiction.  (See Doc. Nos. 1, 3.)

[2]      Also pending, but addressed in another order, is Intervenor Cutler's motion to compel production by Third-Party Rhoads of a memorandum prepared for the Scarcelli campaign in anticipation of Scarcelli's meeting with the Democratic Governors Association.

making the designation "has in good faith determined that the documents contain information protected from disclosure by statute or that should be protected from disclosure as confidential personal information, trade secrets, personnel records, or commercial information."  (Id. ¶ 3.) Unless objected to and removed by agreement or by court order, the designation prohibits parties from using or disclosing the designated materials "other than to prepare for and to conduct" the litigation, subject to limited exceptions.  (Id. ¶ 5.)

A party wishing to challenge a designation made under the CCO may serve an objection upon the designating party, whereupon the parties must "meet and confer in a good faith effort to resolve the objection by agreement," barring which the designating party must file a motion to retain the designation.  It is the designating party's burden to show good cause for the designation.  (Id. ¶ 8.)  "Nothing in [the CCO] or any action or agreement of a party under [the CCO] limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial."  (Id. ¶ 9.)  The CCO is a court-approved form agreement adopted by local rule.  However, the language of the CCO does not reflect "a judicial determination that any documents or information designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER by counsel or the parties is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue."  (Id. ¶ 13.)  Whether the materials under designation are deserving of protection under Rule 26(c)[3] is determined by reference to the following standards.

---

[3]     Intervenor Cutler takes the position that the language of the CCO does not allow for designations to be made for "annoyance, embarrassment, oppression, or undue burden or expense," the interests identified in Rule 26(c) of the Federal Rules of Civil Procedure.  I reject this contention.  The CCO allows a party to designate "confidential personal information" and I construe this language to encompass the private concerns identified in Rule 26(c).  Furthermore, paragraph 13 of the CCO expressly references Rule 26(c).  Even if this were not the case, the appropriate response would be to recast the pending motions as motions for protective orders pursuant to Rule 26(c), not to deny protection out of hand.

**RULE 26(C)**

Rule 26 of the Federal Rules of Civil Procedure outlines general provisions governing

discovery in a civil action.  The scope of civil discovery is broad:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense—including the existence, description, nature,
> custody, condition, and location of any documents or other tangible things and the
> identity and location of persons who know of any discoverable matter.  For good
> cause, the court may order discovery of any matter relevant to the subject matter
> involved in the action.  Relevant information need not be admissible at the trial if
> the discovery appears reasonably calculated to lead to the discovery of admissible
> evidence.

Fed. R. Civ. P. 26(b).  Because the scope of discovery is so broad, the Rules provide that a court

may issue a protective order when the circumstances call for one.  Pursuant to Rule 26(c), a court

may issue a protective order, "for good cause, . . . to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."  Among other possibilities, a court

may forbid the discovery from taking place, limit the scope of disclosure or discovery, limit who

may see the discovery materials, and require that material be filed under seal.  Fed. R. Civ. P.

26(c)(1)(A)-(H).

**DISCUSSION**

In this case, discovery has transpired, but it has transpired behind the shield of the CCO.

The discovery materials that are the subject of this order have been shared among the parties,

including the Intervenor, but the question that remains is whether the materials should lose their

confidential designation so that Intervenor Cutler or the Defendant may disseminate them

publicly or so the public may access them freely on this Court's docket.  The movants maintain

that there is good cause for the confidential designations to persist because it will prevent

4

embarrassment for Rhoads and Scarcelli and potential ridicule of others mentioned or described in the correspondence.

"Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. The 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 402 (1st Cir. 2005) (quoting United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999)). Relevant interests include the interest in confidentiality and privacy. Id. (citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 n.21 (1984)). Additionally, sparing individuals from unnecessary embarrassment is an interest specifically identified in the Rule.

In the Seattle Times case, the Supreme Court made the following observation concerning the "liberal" discovery process associated with our civil justice system:

> It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
>
> There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. As stated by Judge Friendly in International Products Corp. v. Koons, 325 F.2d 403, 407-408 (CA2 1963), "[whether] or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." The prevention of the abuse that can attend the coerced production of information under a . . . discovery rule is sufficient justification for the authorization of protective orders.

Id. at 35-36 (internal citations and quotation marks omitted). The Supreme Court has acknowledged that there exists a countervailing concern for the impairment of first amendment

right of access to a court's public proceedings.  However, it has also emphasized that information

such as the correspondence at issue here is only susceptible to public disclosure "by virtue of the

trial court's discovery process,"  not any general public right of access to private correspondence.

Id. at 32.  The Court also observed that there has never been a tradition of public access to

pretrial discovery.  Id. at 32-33;  see also United States v. Aguilar, 515 U.S. 593, 606 (1995)

("[P]rotective orders may be imposed in connection with information acquired through civil

discovery without violating the First Amendment.").

      The public would have no occasion to intrude upon the private communications of

individuals involved in the "Rosa For Maine" campaign but for the fact that Dennis Bailey is

attempting to vindicate constitutional rights and has included in his complaint an "as applied"

challenge that disavows any connection with a particular political campaign.  This specific issue

makes Bailey's correspondence with Scarcelli and Rhoads relevant to a claim in dispute and that

is why the discovery has occurred.  The First Amendment does not guarantee to Eliot Cutler or

the public at large a right to participate in the discovery process conducted in a civil action

between others.[4]  In any event, the potential for public access would exist in this case even

without participation by Intervenor Cutler.  Currently pending is a motion to intervene by Maine

Today Media, Inc.  (Doc. No. 47.)  As for Defendant, the State's position concerning public

access is a nuanced one.  Obviously, the State of Maine will abide by the orders of this Court

concerning the confidential status of discovery materials in its possession.  However, to the

extent individual documents are not subject to a court order, the State may have an independent

legal obligation to provide them to others if a proper request is presented.  With these

considerations in mind, I turn to the task of balancing the private interest in these

---

[4]     That Cutler has participated to the extent he has is an outgrowth of a state court order granting him
intervenor status.

6

communications against Intervenor Cutler's interest in using them outside of this litigation and against the public's general interest in what transpires in this public forum.

A.    **The Universe of Exhibits**

Because Bailey and Rhoads have separately filed parallel motions requesting the retention of confidential status for their correspondence, they both separately attached to their motions copies of the same correspondence, creating some redundancy for purposes of judicial review of the disputed documents.  As part of the December 13 telephone conference, counsel for Bailey and counsel for Rhoads were instructed to confer and determine whether the Court may overlook certain exhibits because they are reproduced elsewhere on the docket.  By letter dated December 14, 2001, counsel informed me that the correspondence found in docket entries 28 and 29, entries associated with Bailey's motion, do not require separate consideration because they will necessarily be reviewed in the course of considering the exhibits attached to Rhoads's motion and I have thus ordered the redundant documents stricken from the record without any further examination on my part.

Also attached to Bailey's motion are three complete deposition transcripts, filed under seal.  (Bailey Dep., Doc. No. 31;  Rhoads Dep., Doc. Nos. 32 & 33;  Scarcelli Dep., Doc. No. 34.)  During the telephone conference of December 13, 2011, counsel for Bailey indicated that he would be able to designate limited portions of the deposition testimony as confidential once the Court resolved the issue of which of the documents currently under consideration should retain their confidential status.  In other words, the only portions of the depositions for which the movants' request confidential status are those passages that discuss the contents of confidential documents.  As a result of these representations, this Order will not address the deposition transcripts.  I note that judicial review of a request to maintain confidential status concerning the

7

deposition transcripts would not have been feasible at this juncture, in any event, because it is counsels' burden to first review the transcripts and designate only those portions that are alleged to be confidential.  It is not proper practice to designate the entire transcripts confidential.

The remaining filing associated with Bailey's motion (Doc. No. 30) has already been addressed in the context of the December 13 conference.  There was no good reason to file Defendant's request for production of documents as a sealed exhibit.  In summary, the universe of documents considered in this Order are those exhibits attached to Third-Party Deponent Rhoads's motion (Doc. Nos. 36-46).

It is important to bear in mind that these discovery materials were only filed with this Court to facilitate its review to determine if the documents would be filed under seal if any party to the litigation wanted to use them during dispositive motion practice or at trial.  The motions come to this Court in this somewhat unusual posture because Intervenor Cutler would not, and the State of Maine believed it could not, agree that all of the documents designated confidential by Bailey and Rhoads were entitled to that protection.  Much of the discovery and the materials I have examined probably will never be used by the parties or the Court to decide the merits.  In that case, except to the limited extent designated by this Order, the parties remain subject to the Consent Confidentiality Order.  Certain materials that were designated as confidential do not, in my view, fit within the Rule 26 rubric and if they are used for any purpose in this litigation, or elsewhere, they should not be sealed or otherwise kept from public disclosure.  However, much of the personal information from nonparties to this litigation fits squarely within Rule 26. Indeed, I can think of no legitimate use for some of this material in connection with this lawsuit and it appears to me that the only purpose would be to embarrass nonparties, including unidentified individuals who have nothing to do with this litigation, not just Scarcelli and

Rhoads.  If it becomes necessary to use these documents, they should either be redacted to exclude the matters properly identified as confidential, or if redaction is impossible, the exhibit should be filed under seal.

**B.      Rhoads Exhibit A (Doc. No. 36)**

Exhibit A is in two parts.  Part 2 (Doc. No. 36-2) is a paper filing (a memorandum) that Rhoads never produced under the protection of the CCO and it is addressed separately in an order on Intervenor Cutler's motion to compel production.  Part 1 is a copy of a portion of email correspondence discussing the content of the memorandum found in Part 2.  By separate order I have granted the motion to compel production of the memorandum.  For reasons similar to those expressed in the order on the motion to compel, which addresses an assertion of a first amendment privilege based on a standard articulated in <u>Perry v. Schwarzenegger</u>, 591 F.3d 1126 (9th Cir. 2009), the request to retain the confidential status of this particular email correspondence is denied.  There is nothing in the correspondence the production of which would result in annoyance, embarrassment, oppression, or undue burden or expense for purposes of Rule 26.  Nor would the loss of confidential status result in a privacy invasion or the chilling of associational rights connected with participation in the "Rosa For Maine" campaign, given the absence of any significantly objectionable content in this particular communication and the tendency that these communications have to demonstrate the relationship Plaintiff Bailey retained with the "Rosa For Maine" campaign, including in reference to publicizing the allegedly negative attributes and prior associations of Eliot Cutler.

**C.      Rhoads Exhibit B (Doc. Nos. 37 & 38)**

Rhoads describes Exhibit B as "those documents which were created with a constitutionally protected expectation of privacy and which contain words, descriptions, and/or

depictions that are not relevant to the lawsuit and which only can lead to embarrassment, harassment, or annoyance." (Doc. No. 36 at 2.) This request is granted in part. Unless otherwise described, the sentences, passages, or pages in question involve vulgar modes of expression or frank speech that does not bear any relation to the merits of this action and the disclosure of the same would merely lead to embarrassment, harassment, or annoyance for Rhoads and Scarcelli and, likely, others. In addition to what is indicated below, confidential status is retained for the actual email addresses found on these documents.[5] The exhibits are reviewed in the order of the docket entries.

       *(1)    Doc. No. 37*

DB 437 (correspondence related to research on Eliot Cutler): Confidential status is retained for the first highlighted sentence.[6] The second highlighted sentence is not entitled to protected status as it does not embarrass or ridicule anyone. Email addresses should receive confidential status.

DB 552 (correspondence related to research on Eliot Cutler): Confidential status is retained for the highlighted passage. Email addresses should receive confidential status.

DB 554 (correspondence related to research on Eliot Cutler): Confidential status is retained for the highlighted passages. Email addresses should receive confidential status.

DB 587 (correspondence related to research on Eliot Cutler): Confidential status is retained for the highlighted passage. Email addresses should receive confidential status.

DB 613 (correspondence related to public comment on the Cutler Files site): Confidential status is retained for the highlighted passages. Email addresses should receive confidential status.

DB 661 (correspondence concerning Press Herald treatment of Libby Mitchell): Confidential status is retained for this page, except for the email headers.[7] All content on this page is authored by third-party participants in the campaign. Email addresses should receive confidential status.

---

[5]      Unless otherwise indicated, this does not permit redaction of email headers: subject lines, date information, or sender and recipient identifiers. Only the actual email addresses (*i.e.*, user names and domains) should receive confidential status. A reference to "email headers" also includes indications such as "On Aug 19, 2010, at 1:07 PM, Thomas Rhoads wrote."

[6]      "Highlighted sentences" refers to particular sentences or statements that are shown in boxes on the copies filed with the Court. If this email (DB 437) is filed with the Court for any substantive reason, it would not be filed under seal, but the highlighted portion that retains protected status would be redacted. The same would apply to other documents discussed herein that retain only partial confidentiality.

[7]      By "headers" I am referring to email subject lines, date sent information, and sender and recipient identifiers. The email addresses themselves (*i.e.*, user names and domains) should retain confidential status.

DB 731 (correspondence concerning Democratic Party mailing):  Confidential status is retained for the highlighted passage.  Email addresses should receive confidential status.

DB 823 (correspondence concerning "Spencer's letter"):  Confidential status is retained for the content authored by Rhoads, except for the email header.  Confidential status is lifted from content authored by Plaintiff and from email headers.  Email addresses retain their confidential status.

DB 943 (correspondence from Scarcelli regarding advice from a third party about Pat McGowan's candidacy):  Confidential status is retained for this page, except for the email headers, and the last line of content ("He also thought . . .").  Email addresses retain their confidential status.

   *(2) Doc. No. 38*

DB 970 (correspondence authored by Scarcelli concerning a Cutler position):  Although this communication is not likely to lead to embarrassment, confidential status is retained for this page, except for the email header.  The opinion expressed in this document has no tendency to advance any issue in this case.  Email addresses retain their confidential status.

DB 1028 (correspondence concerning Cutler candidacy):  This correspondence, to the extent authored by Scarcelli, falls into the same category as DB 970.  Confidential status is retained for the content[8] authored by Scarcelli.  Confidential status is denied for the email headers, the content authored by Plaintiff, and the transcript of the A. J. Higgins radio announcement.  Email addresses retain their confidential status.

DB 1030 (correspondence concerning the campaign field):  Confidential status is retained for content authored by Scarcelli and the last sentence of the first comment authored by Bailey.  Otherwise, with the exception of email addresses, confidential status is lifted.

DB 1117-1119 (Jan. 2011 correspondence[9] about conflict within the Maine Democratic Party tent):  Confidential status is retained for these three pages, except for the email header at the top of DB 1117 and the Al Diamon quote on DB 1119.  This communication has no tendency to advance any issue in this case.  Email addresses retain their confidential status.

---

[8] By "content" I am referring not merely to the body of the communication, but also to salutations and contact information included therein.

[9] The 2011 date of this correspondence makes it different from the other correspondence with which it is grouped.  However, it is categorized appropriately because its disclosure would merely lead to embarrassment and annoyance and the correspondence has no tendency to contribute to determination of the issues presented in this litigation.  The original title of the forwarded emails, none of which were directed to Bailey, was "Rosa Problem" and was authored by a third-party member of the Democratic Party.  In my view, the only possible relevance to this case is the mere fact that Scarcelli forwarded these emails to Plaintiff.

**D.     Exhibit C (Doc. Nos. 39-46)**

Rhoads describes Exhibit C as "documents which were created with a constitutionally protected expectation of privacy and which were authored well after October 29, 2010, the date on which the Complaint alleges that the Cutler Files was discontinued."  According to Rhoads: "These documents are not relevant to the legal issues raised in the Complaint and relate only to the confidential preparation of press releases for the non-party subpoenaed witnesses."  (Doc. No. 36 at 2.)  A review of the Exhibit C communications demonstrates Third-Party Rhoads's effort to limit the political downside of his involvement in the Cutler Files project, including communications related to the Commission's investigation, and includes correspondence with Rosa Scarcelli related to composing and revising her press statement concerning the same.  This request is granted in part.  It is the fact of Plaintiff's involvement in this process that is relevant to the case.  Content authored by third parties, including Scarcelli, Rhoads, and their advisors retains confidential status, in the main.  In recognition of the interest on the other side of the aisle, however, content authored by Plaintiff should lose its confidential status.  Additionally, confidential status is denied, with limited exceptions, to email headers demonstrating Plaintiff's involvement in the process.  By email headers, I mean the From, Sent, To, Cc, and Subject lines associated with the email correspondence and the names and dates that follow.  Unless otherwise indicated, confidential status is withdrawn from this information, including the names of third parties, except that the specific email addresses (user names and domains) will retain confidential status.

*(1)      Doc. No. 39*

DB 847-849, 851-853 (correspondence concerning Scarcelli public statement[10]):  Confidential status is retained for these six pages, except for the email headers and the comment authored by Plaintiff on DB 848 and 851.  Email addresses retain their confidential status.

DB 855 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 856 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 857 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

*(2)      Doc. No. 40*

DB 858 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 859-860 (correspondence concerning Scarcelli public statement and question of Rhoads "going public" about his relationship to the Cutler Files):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 861 (correspondence concerning Scarcelli public statement):  Confidential status is lifted for this page.  Email addresses retain their confidential status.

DB 868 (correspondence concerning timing of public statement and Commission's possible disclosure of Rhoads's involvement in Cutler Files):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 870 (correspondence concerning amendment of complaint before the Commission and timing of public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 873-874 (correspondence concerning amendment of complaint before the Commission and possible response):  Confidential status is retained for DB 873, except for the email headers and the content authored by Plaintiff.  As for DB 874, confidential status is retained only for the content authored by Michael Nelson and is otherwise lifted for both headers and content, which consist of Bailey-authored content and correspondence directed to public employees.  Email

---

[10]      "Correspondence concerning Scarcelli public statement" addresses both the wording and timing of Scarcelli's public statement about the Cutler Files incident.  These emails predominantly consist of redundant reproduction of essentially the same draft of Scarcelli's public statement.  Obviously, at some point Scarcelli issued a public statement, a record of which may publicly accessible through other channels.  What is entitled to confidential status is the editorial and consultative process of third parties who are not litigants in this case, not Scarcelli's ultimate public statement.

addresses retain their confidential status, except the recipients in state government are to be identified with only their email domain being redacted.

DB 884 (correspondence concerning a media inquiry):  Confidential status is retained for this page, except for the email headers and the content authored by Susan Cover.  Email addresses retain their confidential status.

> *(3)     Doc. No. 41*

DB 885-886 (correspondence concerning Scarcelli public statement):  Confidential status is retained for these two pages, except for the email headers.  Email addresses retain their confidential status.

DB 888 (correspondence concerning Rhoads's worries about whether his anonymous status would be lifted by the Commission):  Confidential status is retained for this page, except for the email header.  Email addresses retain their confidential status.

DB 889 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 890 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 891 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 892 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1099 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1101 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, to the limited extent of content authored by Rosa Scarcelli.  Email addresses retain their confidential status.

> *(4)     Doc. No. 42*

DB 1102 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, to the limited extent of content authored by Rosa Scarcelli.  Email addresses retain their confidential status.

DB 1105 (correspondence concerning feedback from a consultant):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

14

<u>DB 1124</u> (correspondence concerning media inquiry):  Confidential status is lifted for this page. Email addresses retain their confidential status.

<u>DB 1127</u> (correspondence concerning Scarcelli public statement):  Confidential status is lifted for this page, except for the limited content authored by Scarcelli (her salutation material and contact information).  Email addresses retain their confidential status.

<u>DB 1129</u>:  (correspondence concerning Scarcelli public statement):  Confidential status is lifted for this page.  Email addresses retain their confidential status.

<u>DB 1130</u>:  (correspondence concerning Scarcelli public statement):  Confidential status is lifted for this page.  Email addresses retain their confidential status.

<u>DB 1131-1132</u>  (correspondence with an attorney concerning his view of a draft public statement, including the draft prepared by Plaintiff found in DB 1127, 1129, and 1130):  Confidential status is retained except for the content authored by Plaintiff.

<u>DB 1135</u> (correspondence concerning Plaintiff's draft of Scarcelli public statement, including the draft, but not copying Bailey with the correspondence):  Confidential status is retained for these pages, except as indicated.  There is content authored by Plaintiff, but that content is already publicly available from rulings on other correspondence addressed herein.  The fact that Scarcelli forwarded the attorney's response to Plaintiff and Rhoads should likewise be publicly acknowledged.

   *(5) Doc. No. 43*

<u>DB 1136-1137</u> (a continuation of DB 1135):  Confidential status is retained for these two pages.

<u>DB 1139-1140</u> (correspondence concerning Scarcelli public statement in relation to Commission proceedings):  Confidential status is retained for these two pages, except for the email headers and the content authored by Plaintiff in the middle of DB 1139.  Email addresses retain their confidential status.

<u>DB 1141-1142</u> (correspondence concerning Scarcelli public statement):  Confidential status is retained for these two pages, except for the email header.  Email addresses retain their confidential status.

<u>DB 1143-1144</u> (correspondence concerning Scarcelli public statement):  Confidential status is retained for these two pages, except for the email headers.  Email addresses retain their confidential status.

   *(6) Doc. No. 44*

<u>DB 1145</u> (correspondence concerning media inquiry):  Confidential status is retained for this page, except for the email headers and the content authored by Plaintiff.  Email addresses retain their confidential status.

DB 1150 (correspondence concerning media inquiry):  Confidential status is retained for this page, except for the email headers and the content authored by Plaintiff.  Email addresses retain their confidential status.

DB 1152 (correspondence concerning media inquiry):  Confidential status is retained for this page, except for the email headers and the content authored by Plaintiff.  Email addresses retain their confidential status.

DB 1177 (correspondence concerning Scarcelli public statement in relation to Commission proceedings):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1182 (correspondence concerning Scarcelli public statement in relation to Commission proceedings):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1187 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1191 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1192 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

(7)     *Doc. No. 45*

DB 1197 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the email headers.  Email addresses retain their confidential status.

DB 1200-1201 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the first email header.  Email addresses retain their confidential status.

DB 1202-1203 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for the first email header.  Email addresses retain their confidential status.

DB 1205 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for email headers.  Email addresses retain their confidential status.

DB 1207 (correspondence concerning Scarcelli public statement):  Confidential status is retained for this page, except for email headers.  Email addresses retain their confidential status.

(8)   Doc. No. 46

DB 1214 (correspondence concerning media report/request for interview):  Confidential status is retained for this page, except for email headers.  Email addresses retain their confidential status.

DB 1221-1223 (correspondence concerning media handling): Confidential status is retained for this page, except for email headers and the content authored by Plaintiff at the bottom of DB 1221 and continuing onto 1222.  Email addresses retain their confidential status.

DB 1225 (correspondence concerning media handling):  Confidential status is retained for this page, except for email headers.  Email addresses retain their confidential status.

DB 1230 (correspondence concerning media handling/media report/request for interview):  Confidential status is retained for this page, except for email headers.  Email addresses retain their confidential status.

Third-Party Deponents and Plaintiff have in good faith provided a good deal of personal correspondence pursuant to this Court's discovery order.  For them, this information contains personal information about private thoughts about third parties who are not the subject of this litigation and other communications that have no place on the public docket of this proceeding because they have no direct relevance to the issues in this case.  However, the parties, of course, are still free to make whatever arguments they want to make regarding these confidential materials when it comes time to address the merits of this litigation.  This Order simply directs that, absent further order from this Court, the materials having confidential status remain under the protection of the Consent Confidentiality Order.

I note that by letter correspondence I have been informed that the parties to these motions are, in large measure, in agreement with my assessment.  According to their discussions no party would object to this Court's determination of retained confidential status or the need for redaction as to Bates Nos. DB 661, 731, 823, 857, 858, 870, 873, 874, 884, 888, 943, 970 1030, 1099, 1105, 117, 1118, 1119, 1127, 1182, and 1230.  The State of Maine could not "agree" to any such Order because of the contested nature of confidential status, and thus I have

independently reviewed all of the exhibits without regard to the assessment undertaken by the parties and my conclusion is that the entries I have indicated are entitled to confidential status.  I note that Intervenor Cutler's willingness to be bound by the provisions of the Consent Confidentiality Order to so many of the submissions somewhat undercuts Bailey and Rhoads's argument that Cutler intends to use the documents for purposes unrelated to the present litigation.

### CONCLUSION

Based upon the foregoing, I now order that within fourteen days of the entry of this Order, absent further order of this Court, confidential status will be lifted as to the documents I have so designated in this Order.   If any documents, or portions thereof, which continue to retain confidential status are used in subsequent litigation, they shall not be publicly available and will be filed in redacted form or, if redaction is not possible, under seal in accordance with the procedures set forth in the Consent Confidentiality Order.

I further note for the record that Attorney Wagner has already advised the Clerk's Office that by Monday, December 19, 2011, Third Party Rhoads will file redacted copies of his sealed memorandum at Doc. No. 36 and his sealed reply at Doc. No. 58.  The exhibits at Doc. No. 36 are addressed in the body of this Order.  The two exhibits at Doc. No. 58 consist of Exhibit A, DB 492, e-mail correspondence from Bailey regarding Cutler that will remain confidential and Exhibit B, e-mail correspondence between Jonathan Piper, Esq. and John Paterson, Esq., copies to other counsel, which is ordered unsealed forthwith.

### CERTIFICATE

Any objections to this Order shall be filed in accordance with Rule 72 of the Federal Rules of Civil Procedure.

***So Ordered.***

December 19, 2011                         /s/ Margaret J. Kravchuk
                                          U.S. Magistrate Judge